Jack Stanislaw, J.
This action is the result of an aborted conveyance of real property located in the Town of Huntington. Plaintiffs Levine contracted to purchase a house from defendants Robin, and, based upon the failure of the transaction, sue for a return of their $2,800 payment on contract. Robin has generally denied the allegations of the complaint as well as accused plaintiffs of having failed to comply with the terms of the contract. They also counterclaim for damages said to have *325 resulted from Levine’s breach of the contract. The action was tried before this court without a jury.
Chronology is of prime importance. The contract was executed March 28, 1963. Even before then an application had been submitted by Levine for a Veterans’ Administration mortgage ; and a rider to the contract, dated March 29,1963 made the sale “ subject to purchaser obtaining a CLI. mortgage commitment of 85% of the purchase price within 45 days from the date of this contract”. Levine’s application for mortgage, in the normal course of processing, reached the Veterans’ Administration on or about April 8, at which time it was assigned to a fee appraiser. On April 24, 1963, the latter reported that the premises were “ non-conforming ”. This information was passed on to the mortgage servicing corporation on May 16 by phone, and on May 17 by letter. The net effect of these two communications was to advise that the loan was ineligible. Plaintiff then showed up at the Veterans’ Administration office on May 20 to learn more about the ineligibility of the loan. He was told that the building would have to be, in effect, altered to conform with Veterans’ Administration requirements and a new certificate of occupancy obtained. Meanwhile, the 45-day period for getting the commitment had expired on May 12, 1963. The parties concededly extended this date two weeks, to May 26, 1963. Even so, it was June 20 before defendant wrote to the Veterans’ Administration enclosing a proper certificate of occupancy and indicating changes to be made to conform to town and Veterans’ Administration requirements. Another appraisal was assigned on July 10, and the fact of this new activity related to Levine July 15, 1963. However, on July 13 the assigned appraiser indicated some delay until a legal description and appraisal fee were received from the lender. By July 22 be had received only the fee, but not the description. Levine’s attorney wrote to Robin’s attorney advising of his client’s decision to cancel the contract on August 8, 1963, and the Veterans’ Administration was notified to like effect August 14, 1963.
One other point needs clarification. The certificate of occupancy, which Robin forwarded on June 20 to the Veterans’ Administration to eliminate Levine’s difficulties in getting his loan approved, covers the subject property plus an additional parcel not under contract. Therefore, Levine argues, this certificate was not capable of removing the cancellation of his application by the Veterans’ Administration and he says further that the town building department advised him that a certificate of occupancy could not be issued confined solely to the property *326 which he had contracted to buy. Thus, he argues that the contract could not be completed and his election to cancel it was proper. Bobin takes the position that until there had been a reappraisal Levine had no right .to avoid the contract and recover his down payment. Stated briefly, Levine is claiming that the mortgage was impossible to get, giving him the right to cancel; Bobin says the cancellation was premature, thereby putting Levine in default and permitting Bobin to retain the down payment as and for his damages due to a breach of contract.
The printed portion of the contract contains the statement that the premises described “are to be conveyed subject to: 1. Zoning regulations and ordinances of the city, town or village in which the premises lie which are not violated by existing structures.” The previously cited Veterans’ Administration mortgage clause, appearing in a typewritten rider to the printed contract, takes precedence over any conflicting printed clauses. Although plaintiffs .might be required to accept title in the usual course of events, the mortgage clause has inferentially eliminated the “ zoning” clause. If the parties have specified the particular type of mortgage commitment to be obtained, as here, with presumed knowledge of the prerequisites for such mortgage, then the-so-called “ subject-to ¡-zoning ” clause can be deemed to have been waived by them to the extent that those prerequisites are necessarily incompatible with the effect of such clause.
At the expiration of the 45-day period, within which plaintiffs were to have obtained a mortgage, the parties agree that there was a two-week extension thereof. Defendants’ efforts to assist in the procurement of the mortgage extended even beyond that time. Plaintiffs personally do not appear to have done anything with regard to the problem of the mortgage subsequent to May 20, well prior to the end of the orally extended commitment date. However, it is a fact that the mortgage servicing corporation, the Marschall Mortgagee Corp., did actively take steps designed to get plaintiffs their mortgage after the contractually limited and extended time. What is Marschall’s position here? When Levine applied for a mortgage, more that two weeks before going to contract, his application was processed through Marschall. Later, the Veterans’ Administration and Marschall communicated with respect to the already noted problems of issuing the commitment. Other than a telephone call to plaintiff from the Veterans’ Administration to inform him that the appraisal had been reassigned on July 10, Levine apparently did not deal directly with either Marschall or the Veterans’ Administration. Bather, it seems that any *327 delay in reappraisal was due to Marschall’s procrastination in forwarding an appraisal fee and a legal description or survey.
One issue here is whether Levine cancelled within a reasonable time. Time in this case must be measured first from the contractually limited period, then from the end of the added two weeks. This brings us to May 26, 1963. Keeping in mind that Levine notified Robin of cancellation on August 8, Levine’s own last participation was on July 15, when the Veterans’ Administration notified him of the reassigned appraisal. The contract time limit having been once modified and even thereafter remaining open on an indefinite basis, the contract became one terminable either reasonably or at will, dependent upon the circumstances (see Mitler v. Friedeberg, 32 Misc 2d 78).
Assuming, as we do, that the time for performance or cancellation of the contract became 1 ‘ a reasonable time ’ ’, then only in light of continuing efforts of the parties well after the extended date can the propriety of the cancellation be determined (Foelsch v. Eaton, 7 A D 2d 730). .The court might be constrained to validate Levine’s action but for two crucial factors. The first is the great lapse of time between May 26 and August 8, over two months, if reasonableness is to be measured from the former date. Considering the facts from this aspect, the time that plaintiff allowed to pass with knowledge of Robins’ continued efforts (July 15) is not now available to establish the righteousness of his own cause. The same holds true for the period from July 15 to August 8, 1963, under the circumstances.
The second decisive factor revolves around Marschall’s status. From start to finish Marschall apparently acted on plaintiff’s behalf. Of course, to the extent that its reward was also dependent upon defendant’s ability to satisfy the Veterans’ Administration it was, in a sense, attempting to assist there as well. Nevertheless the plaintiffs, even before the signing of the contracts, introduced Marschall into the situation. They cannot ignore its efforts, in theory undertaken primarily on plaintiffs’ behalf, which continued into August, 1963, even if partially negative by its delaying of the transmittal of appraisal fee and description. These actions considered, the cancellation of August 8 becomes almost peremptory.
Plaintiffs, in effect, informally acquiesced in defendants’ efforts after the time had expired. They did have a right to cancel after May 26, which they disregarded as defendants tried to rectify the mortgage situation. Having done so either directly or indirectly for almost two and a half months, the cancellation on the eve of a re-evaluation of the property by the Veterans’ *328 Administration seems inequitable and unreasonable. The instant situation is unlike that in Zuk, v. Irion (12 Misc 2d 871), where purchasers could not get a mortgage commitment yet were given time beyond tine contract date by the sellers. The sellers there finally cancelled after it became apparent that purchasers had just about no chance to obtain the necessary commitment. Almost everything that could have been done or tried had failed, and the court awarded judgment to the purchasers returning their down payment. Sellers’ cancellation of the contract about two weeks after the last hope had died was found to equitably allow for the return of the money paid on contract. But here the equities are not so easily balanced. The appraiser is on his way when plaintiffs cancel. The parties have gone to the threshold of a final stab at a commitment when plaintiffs call off the whole deal. In all fairness plaintiffs, having gone as far as they did, are obligated to respect the completion of that which they have set in motion.
Whether or not a certificate of occupancy might ever have been available for the property is not pertinent here. Proof either way was insufficient, and this issue remains a matter of conjecture not especially critical under all the circumstances.
The cancellation was premature. The complaint is dismissed. Defendants have established their counterclaim to the extent of damages in the sum of $1,000, and they are therefore awarded said amount on the counterclaim.